J-S17003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                          : PENNSYLVANIA
                                                          :
                      v.                                  :
                                                          :
                                                          :
                                                          :
GLENN T. SCOTT                                            :
                                                          :
                   Appellant                              : No. 2302 EDA 2025

Appeal from the Judgment of Sentence Entered August 6, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008104-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 22, 2026**

Glenn T. Scott appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County for his convictions of third degree murder (18 Pa.C.S.A. § 2502(c)), firearms not to be carried without a license (18 Pa.C.S.A. § 6106(a)(1)), and carrying firearms on public streets in Philadelphia (18 Pa.C.S.A. § 6108). Scott argues that the evidence was insufficient to sustain his convictions because the Commonwealth failed to present sufficient evidence to establish that he was the shooter or that he possessed a firearm. After careful review, we affirm.

On July 25, 2023, Scott was arrested and later charged with murder and related firearm offenses in connection to the shooting and killing of Lamar Alston. Scott waived his right to a jury trial, and the matter proceeded to a bench trial on May 28, 2025.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court aptly summarized the facts based on the evidence presented at the bench trial.

On July 15, 2023, police responded to a report of a person with a gun on the corner of 30th and Page Streets [in Philadelphia]. After a brief investigation, police located an unconscious man, later identified as Lamar Alston, between two cars parked on the side of the street. The officers quickly determined that Mr. Alston was suffering from two gunshot wounds and immediately transported him to the hospital. A day or two later, Mr. Alston succumbed to his injuries. (N.T. 5/28/2025 at 17-21, 28).

While Mr. Alston was being transported to the hospital, police started processing the crime scene on the 2000 block of North 30th Street. During this initial investigation, police recovered two 9mm fired cartridge cases ("FCCs"). Shortly after this initial investigation, Mr. Alston died as a result of his injuries, and the case was reassigned to a homicide detective. (N.T. 5/28/2025 at 23, 25, 28).

After Mr. Alston passed away, homicide detectives returned to the scene and recovered security footage of the day of the shooting. The relevant recovered video footage depicted an individual wearing a dark-colored hoodie with a reflective Nike Swoosh logo and dark-colored pants of a similar color. This individual, later identified as [Scott], was walking near the intersection of 30th Street and Ridge Avenue prior to the shooting. Exh. C-19. As [Scott] walked along Ridge Avenue, [h]e entered the nearby Chinese takeout restaurant, the New Diamond. [Scott] then briefly left the nearby area. [] Six minutes later, [Scott] returns to the area and begins interacti[ng] with a bicycle on Ridge Street. (N.T. 5/28/2025 at 34-35, 48-51, 56.)[.]

While [Scott] is interacting with the bicycle, Mr. Alston is seen walking towards the New Diamond from across Ridge Avenue. While Mr. Alston was in the restaurant, [Scott] remained outside near his bicycle. While standing outside, [Scott] pulled out a dark, metal object. As Mr. Alston left the restaurant walking southbound on 30th Street, [Scott] followed on his bicycle. Once Mr. Alston gets to Page Street, an individual on a bicycle is briefly seen before Mr. Alston falls between the two cars, where he is later located by

- 2 -

the police. No other people were visible on the street at the time of the shooting. (N.T. 28/2025 at 36-37, 40-43.)[.]

Based upon this recovered footage, police sent out a patrol alert seeking assistance in identifying the man on the bicycle as a suspect. On July 23, 2023, a Springfield Township Police Officer, Officer Donnelly, recognized and identified that the man on the bicycle was [Scott]. Officer Donnelly immediately knew the suspect was [Scott] because he had spent approximately 3 hours with [Scott] a day or two prior to the identification. On July 26, 2023, Officer Donnelly repeatedly confirmed his initial identification during an interview with detectives. (N.T. 5/28/2025 at 46-51).

On October 7, 2023, police were notified that a handgun had been recovered that matched the two FCC[s] recovered from the scene. The gun was recovered by the Pennsylvania State Police from Brandon Ali Richardson during an unrelated arrest. During Mr. Alston's autopsy, it was determined that the cause of death was two gunshot wounds, and the manner of death was homicide. (N.T. 5/28/2025 at 57, 59, 61-64).

Trial Court Opinion, 12/5/25, at 3-5.

Based on the above, the trial court found Scott guilty of third degree murder, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia.[1] On August 6, 2025, the court sentenced him to 15 to 40 years' incarceration for third degree murder and concurrent sentences of one to two years' incarceration for each of the two firearm convictions. Scott appealed. Both Scott and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. *See* Pa.R.A.P. 1925(a)-(b).

Scott raises two issues on appeal.

_____

[1] Scott was found not guilty of possessing an instrument of crime, 18 Pa.C.S.A. § 907(a).

- 3 -

1. Was the evidence insufficient to establish third degree murder where the evidence merely established that Glenn Scott was present at the scene?

2. Was the evidence insufficient to establish that Glenn Scott possessed a firearm where the evidence did not establish that he was the shooter and where the item seen in his hand on video was blurry and indistinct?

Appellant's Brief, at 2.

Scott's issues challenge the sufficiency of the evidence to support his convictions. As his arguments are interrelated, we address them together.

Our standard of review for a challenge to the sufficiency of the evidence is well established.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (brackets and citation omitted).

"[I]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Torsunov*, 345 A.3d 339, 347 (Pa. Super. 2025) (citation omitted). "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa. Super. 2016) (brackets and citation omitted).

Scott argues that the evidence was insufficient to identify him as the shooter because at best the evidence established that he was merely present at the scene but could not connect him to the shooting because he was out of view of the camera at the time of the shooting. *See* Appellant's Brief, at 7-14. According to Scott, another person could have been located outside the view of the video footage, and it is equally likely that individual was the shooter. *See id.* at 10-14. Further, he argues that the evidence is insufficient to establish that the object in his hands was a firearm, which he states lends further support to his argument that there was insufficient evidence that he was the shooter. *See id.* at 8, 14-16. The Commonwealth argues that the surveillance footage establishes that Scott was the shooter because it shows Scott "entering the area of the crime scene just before the shooting occurs, and exiting only moments after it takes place." Appellee's Brief, at 9.

Regarding Scott's identification as the individual in the surveillance footage, Officer Donnely testified that about a week after the murder he immediately recognized the individual pictured in the patrol alert for the July 15, 2023, homicide as Scott based on a three hour interaction he had with Scott a day or two prior. *See* N.T., 5/28/25, at 47-51; Trial Court Opinion, 12/5/25, at 8-9. A few days later, Officer Donnely met with police personnel, and, after reviewing additional photos and videos, gave several signed statements identifying Scott as the individual depicted in each photo or video still. *See* N.T., 5/28/25, at 49-51; Trial Court Opinion, 12/5/25, at 8-9. This is clearly sufficient evidence to establish that Scott was the individual in the surveillance footage.

Additionally, the trial court aptly addressed Scott's arguments that there was insufficient evidence that he possessed a firearm and used that firearm to kill Alston.

> In support of this claim, [Scott] makes the following arguments: (1) the video was too blurry to clearly identify a firearm; (2) [Scott] was not in possession of that firearm when he was arrested; (3) the person that shot Mr. Alston was not captured on video; (4) [Scott] was not in camera view when [the] shooting occurred; (5) it was not definitively established that no one else was nearby when the shooting occurred; and (6) the firearm was recovered from another person.[a] *Id.* These claims warrant no relief.
>
> > [a] [Scott] also argues that there was no evidence of motive, and [Scott] was merely present at the scene of the shooting.
>
> . . . .

[Scott] appears to be essentially arguing that the lack of some particular forms of more direct evidence, e.g., clear video of the shooter actually shooting or an eyewitness, means that all of Commonwealth's substantial circumstantial evidence was insufficient. ***See***, Statement of Matters at 1-2. This argument is at odds with the well-settled principle that the ["Commonwealth may sustain its burden by means of wholly circumstantial evidence." ***Sebolka***, 205 A.3d at 336-37.]

When properly considering all of the evidence and every reasonable inference therefrom, as required, there is significant direct and circumstantial evidence that [Scott] both possessed a firearm and shot Mr. Alston. During the trial, the Commonwealth presented evidence showing that: (1) [Scott] possessed a concealed, dark metal object prior to the shooting[, ***see*** N.T., 5/28/25, at 40;] (2) [Scott] was not licensed to carry a firearm[, ***see*** Exh. C-29;] (3) [Scott] followed Mr. Alston on a bike towards Page Street[, ***see*** N.T., 5/28/25, at 42;] (4) [Scott] and Mr. Alston were alone at the intersection of 30th and Page Street[. ***See id.*** at 43;] (5) while [Scott] and Mr. Alston were alone on the street, Mr. Alston was shot and fell between two cars[, ***see id.*** at 19, 42-44;] (7) [t]he gun used in the shooting was a 9mm handgun with a 3-inch barrel[, ***see id.*** at 57, 63-64;] (8) [w]hen police arrived at the scene, they observed that Mr. [Alston] had been shot twice[, ***see id.*** at 28;] and (9) Mr. Alston later died from gunshot wounds[, ***see id.*** at 18-19.]

Trial Court Opinion, 12/5/25, at 9-11.

As explained by the trial court, viewed in the light most favorable to the Commonwealth, this evidence, as well as all reasonable inferences therefrom, supports that Scott possessed a firearm and used that firearm to shoot and kill Alston. The evidence established that Scott possessed a firearm, was interacting with Alston moments before the shooting, and was immediately near the scene of the crime right before and after the shooting.

Scott also claims that it was equally likely that another individual out of view of the surveillance cameras was the shooter and, in support of his

argument, he cites to **In Interest of J.B.**, 189 A.3d 390 (Pa. 2018). **See** Appellant's Brief, at 12-14. **J.B.** is clearly distinguishable and inapplicable.

In **J.B.**, our Supreme Court addressed an "atypical situation" where, based on all the evidence presented and reasonable inferences therefrom viewed in the light most favorable to the Commonwealth, "the trial evidence **equally** supported two reasonable but diametrically opposed ultimate inferences: one that the defendant committed the murder, and the second that he did not commit the murder." **J.B.**, 189 A.3d at 409 (emphasis added). There, after reviewing all the evidence presented and reasonable inferences therefrom in the light most favorable to the Commonwealth, the Court determined that the Commonwealth had only established that the eleven-year-old juvenile defendant was at home with the victim and her seven year old daughter for about an hour before leaving for school. **See id.** at 421. The Court found it equally likely that in the 45 minute period after J.B. and the other juvenile left for school, an unidentified individual entered the residence and committed the murder. **See id.** Therefore, since both scenarios were equally likely based on the evidence presented, the Commonwealth failed to present sufficient evidence to sustain the adjudication of J.B.'s delinquency. **See id.** at 421-22.

Here, in contrast to **J.B.**, there was video surveillance footage that placed Scott at the scene of the crime at the time of the shooting and in possession of a firearm. Accordingly, it is not equally likely that another

individual was the perpetrator and therefore, Scott's reliance on **J.B.** is misplaced. Therefore, Scott is not entitled to relief on either contention.

Based on the foregoing, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2026